# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

SHIRLEY LETO,
*Plaintiff,*

v.

No. 3:20-cv-01272 (VAB)

BRIDGES HEALTHCARE, INC.,
*Defendant.*

## RULING AND ORDER ON PENDING MOTIONS

Shirley Leto ("Plaintiff") sued Bridges Healthcare, Inc. ("Bridges" or "Defendant") in Connecticut Superior Court for wrongful discharge under Connecticut law, breach of contract, and breach of the covenant of good faith and fair dealing. Compl., ECF No. 1-1 (July 23, 2020).[1]

On August 28, 2020, Bridges removed the case to this Court. Notice of Removal, ECF No. 1 (Aug. 28, 2020). On October 1, 2020, Bridges moved to dismiss the Complaint. Mot. to Dismiss, ECF No. 13 (Oct. 1, 2020) ("First MTD").

On October 9, 2020, Ms. Leto moved to amend the Complaint. Req. for Leave to Amend, ECF No. 20 (Oct. 9, 2020) ("First Mot. Amend").

On October 20, 2020, Ms. Leto again moved to amend the Complaint. Req. for Leave to Amend, ECF No. 22 (Oct. 20, 2020) ("Second Mot. Amend"); *see also* Second Am. Compl., ECF No. 22 (Oct. 20, 2020).[2]

On December 4, 2020, Bridges moved to dismiss the Second Amended Complaint. Mot. to Dismiss Second Am. Compl., ECF No. 27 (Dec. 4, 2020) ("Second MTD"); Mem. of L. in

---

[1] The Complaint is located at ECF pages 5-11.

[2] The Second Amended Complaint is located at ECF pages 3-9, with the redlined version located at ECF pages 11-17.

Supp. of Mot. to Dismiss Second Am. Compl., ECF No. 28 (Dec. 4, 2020) ("Second MTD Mem.").

For the following reasons, the Court will enter the following orders:

Ms. Leto's second motion to amend will be **GRANTED** and, in light of that order, Ms. Leto's first motion to amend will be **DENIED as moot**;

Bridges's first motion to dismiss will be **DENIED as moot** in light of the filing of the Second Amended Complaint;

Bridges's motion to dismiss will be **GRANTED** with respect to the wrongful discharge claim; and

The Court will decline to exercise supplemental jurisdiction over Ms. Leto's breach of contract and breach of the covenant of good faith and fair dealing claims, but will delay remand of these claims as described below.

Ms. Leto may move for leave to file an amended pleading by **August 27, 2021**, to the extent the deficiencies identified in this ruling can be addressed.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Allegations[3]

Bridges allegedly "was and is a Connecticut corporation with its principal place of business" in Milford, Connecticut. Second Am. Compl. ¶ 1.

"At all times" relevant to the allegations set forth in the Second Amended Complaint, "Bridges [allegedly] was and is the state-designated Local Mental Health Authority for Milford, Orange, and West Haven[, Connecticut] and the surrounding communities." *Id.* ¶ 2.

---

[3] All factual allegations are drawn from the Second Amended Complaint, which was unopposed by Defendant and, as discussed below, will be construed by the Court as Ms. Leto's operative pleading.

In 2006, Ms. Leto, who allegedly "obtained a bachelor's degree from Springfield College in 2002 and a master's degree from Southern Connecticut State College in 2006, began working for [Bridges] as a social worker." *Id.* ¶ 4.

During her time at Bridges, she allegedly "always met or exceeded job expectations and was often commended for her work." *Id.* ¶ 5. During her employment with Bridges, she allegedly also "was not warned, reprimanded, or otherwise disciplined." *Id.* ¶ 7.

"At all times" relevant to the allegations set forth in the Second Amended Complaint, Bridges allegedly "had a staff handbook, the express purpose of which" allegedly was "to provide all staff with a set of tools and easy access to critical policies, procedures and resources that educate, inform and assist staff in their job functions." *Id.* ¶ 8 (internal quotation marks omitted).

"On and before May 15, 2020," Bridges allegedly "did not have a rule or policy prohibiting staff from fraternizing with one another," and "the staff handbook of Bridges [allegedly] expressly directed personnel to respect the privacy rights of colleagues." *Id.* ¶¶ 9-10.

"Between October 2018 and May 2020, John Dixon [allegedly] was employed by [Bridges] as executive director." *Id.* ¶ 11.

During that time, "Ms. Leto and Mr. Dixon [allegedly] became friends" and also allegedly "became engaged in a consensual relationship." *Id.* ¶¶ 12-13. The relationship allegedly "did not progress beyond . . . 'light petting.'" *Id.* ¶ 14. During that time, "the quality of Ms. Leto's work [allegedly] did not diminish." *Id.* ¶ 15.

On April 28, 2020, Ms. Leto allegedly "participated in a 'Zoom' call with [Bridges]'s counsel, Andrew Cohen, and Michelle LeMere, who [allegedly] was then Bridges Board Chair." *Id.* ¶ 16. During the call, Ms. Leto allegedly was "interrogated about her relationship with Mr.

Dixon," including questions allegedly about "what they did when they were together," such as "whether they had kissed, whether they had kissed with open mouths, when and where they had spent time together, where they were when they had kissed, what part of Ms. Leto's body Mr. Dixon had kissed, [and] whether he had kissed her breast." *Id.* ¶ 17. Ms. Leto allegedly was "mocked" when she allegedly "told Attorney Cohen that she had served Mr. Dixon tea when he came to her house," and allegedly was "berated for not being forthcoming with information about her relationship with Mr. Dixon and for not having reported the consensual relationship to her supervisor." *Id.*

On May 15, 2020, Ms. Leto allegedly "was fired from her job with Bridges." *Id.* ¶ 18. Ms. Leto alleges that she was fired "for having engaged in a consensual relationship" with Mr. Dixon. *Id.* ¶ 19.

## B.    Procedural History

On July 23, 2020, Ms. Leto filed a Complaint against Bridges in Connecticut Superior Court. Compl.

On August 28, 2020, Bridges removed the case to federal court. Notice of Removal.

On October 1, 2020, Bridges moved to dismiss the Complaint. First MTD.

On October 5, 2020, Ms. Leto moved to amend the Complaint. Req. for Leave to Amend, ECF No. 16 (Oct. 5, 2020).

On October 9, 2020, Ms. Leto moved to withdraw her motion to amend the Complaint. Withdrawal of Pleading, ECF No. 19 (Oct. 9, 2020).

That same day, Ms. Leto moved to amend the Complaint. First Mot. to Amend.

On October 10, 2020, the Court granted Ms. Leto's motion to withdraw her motion to amend the Complaint. Order, ECF No. 21 (Oct. 10, 2020).

On October 20, 2020, Ms. Leto again moved to amend the Complaint. Second Mot. to Amend.

On October 21, 2020, Ms. Leto opposed Bridges's motion to dismiss the Complaint. Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss, ECF No. 23 (Oct. 21, 2020).

On October 22, 2020, Ms. Leto filed a supplement to her opposition to the motion to dismiss. Addendum, ECF No. 24 (Oct. 22, 2020).

On October 27, 2020, Bridges moved for an extension of time to respond to the Second Amended Complaint. Mot. for Extension of Time, ECF No. 25 (Oct. 27, 2020). Bridges noted that it "did not expect to oppose [Ms. Leto]'s motion to amend," but requested additional time to respond as "the Second Amended Complaint includes new legal claims and legal theories," as it "expect[ed] to file a new motion to dismiss the Second Amended Complaint in its entirety." *Id.* at 1.

On October 28, 2020, the Court granted the motion for an extension of time, and permitted Bridges until December 4, 2020, to file a response to the Second Amended Complaint. Order, ECF No. 26 (Oct. 28, 2020).

On December 4, 2020, Bridges moved to dismiss the Second Amended Complaint for failure to state a claim. Second MTD; Second MTD Mem.

On January 20, 2021, after several extensions of time, *see* Order, ECF No. 30 (Dec. 23, 2020); Order, ECF No. 32 (Jan. 11, 2021), Ms. Leto opposed the second motion to dismiss. Mem. in Opp'n to Def.'s Mot. to Dismiss Second Am. Compl., ECF No. 33 (Jan. 20, 2021) ("Opp'n Second MTD").

On February 12, 2021, after an extension of time, *see* Order, ECF No. 35 (Feb. 3, 2021),

Bridges replied to Ms. Leto's opposition to the second motion to dismiss. Reply Mem. in Supp.

of Mot. to Dismiss Second Am. Compl., ECF No. 36 (Feb. 12, 2021) ("Reply Second MTD").

On July 27, 2021, the Court held a hearing by videoconference on the pending motions.

Min. Entry. ECF No. 46 (July 28, 2021).

## II.   STANDARD OF REVIEW[4]

A complaint must contain a "short and plain statement of the claim showing that the

pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon

which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a

complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working

principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his

'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do." (internal citations omitted)). Second, "only a

complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at

679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible."

---

[4] As Bridges has not opposed Ms. Leto's latest motion to amend but, rather, has responded to the proposed Second
Amended Complaint on the merits, the Court will grant Ms. Leto's second motion to amend, ECF No. 22. Given this
order, the Court will deny as moot both Ms. Leto's first motion to amend, ECF No. 9, and Bridges's first motion to
dismiss, ECF No. 13.

*Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), a court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. A court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.")).

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

## III. DISCUSSION

Ms. Leto's Second Amended Complaint sets forth three counts: (1) wrongful discharge under Connecticut common law and Section 31-51q of the Connecticut General Statutes[5]; (2) breach of contract; and (3) breach of the covenant of good faith and fair dealing.

---

[5] Because Ms. Leto's Section 31-51q claim requires interpretation of First Amendment and Fourteenth Amendment law, this Court has federal question jurisdiction over this case, removed from state court. *See, e.g.*, *Bracey v. Bd. of Educ. of City of Bridgeport*, 368 F.3d 108, 115-16 (2d Cir. 2004) (finding that the district court had jurisdiction over a plaintiff's claim under section 31-51q because "a federal question was implicated on the face of his well-pleaded

Bridges has moved to dismiss Ms. Leto's Second Amended Complaint in its entirety for failure to state a claim under Rule 12(b)(6). Specifically, Bridges sets forth four arguments: that (1) Ms. Leto cannot establish that her termination contravenes an important public policy, as required by Connecticut law; (2) even if Ms. Leto's termination contravened public policy, she would not be "'otherwise without remedy' . . . based on the existence of, and her claim under, section 31-51q of the Connecticut General Statutes"; (3) Ms. Leto's Second Amended Complaint "fails to set forth the elements of a claim under section 31-51q of the Connecticut General Statutes"; (4) Ms. Leto's Second Amended Complaint "fail[s] to set forth the elements of an implied contract under Connecticut law." Second MTD ¶¶ 1-4.

The Court will address each of Ms. Leto's claims, for wrongful discharge under Connecticut General Statutes Section 31-51q, breach of contract, and breach of the covenant of good faith and fair dealing, in turn.

## A.  Count One: Wrongful Discharge Under Connecticut General Statutes Section 31-51q

"As a general matter, employment relationships in Connecticut are 'at-will' absent a contract to the contrary." *Van Kruiningen v. Plan B, LLC*, 485 F. Supp. 2d 92, 95 (D. Conn. 2007) (citing *Thibodeau v. Design Grp. One Architects, LLC*, 260 Conn. 691, 697–98 (2002)). Connecticut only recognizes a common law exception to at-will employment "if the former employee can prove a demonstrably *improper* reason for dismissal, a reason whose impropriety is derived from some important violation of public policy." *Lopez v. Burris Logistics Co.*, 952 F.

---

complaint," as the plaintiff had "allege[d] on the face of his well-pleaded complaint that the Board [of Education] violated his rights as established, under section 31-51q, by either the United States or the Connecticut Constitution," and noting that "[c]ourts construing section 31-51q consistently look to federal First Amendment law to determine whether section 31-51q gives rise to a cause of action in the cases before them").

Supp. 2d 396, 404 (D. Conn. 2013) (quoting *Burnham v. Karl and Gelb, P.C.*, 252 Conn. 153,

159–60 (2000)).

> In general, under Connecticut law, in order to state a claim for common law
> wrongful discharge in violation of public policy, a plaintiff must: (1) plead
> that the alleged conduct by the employer contravenes public policy and (2)
> demonstrate that the plaintiff is otherwise without remedy and that
> permitting the discharge to go unredressed would leave a valuable social
> policy to go unvindicated.

*Id.* at 405 (quoting *Burnham*, 252 Conn. at 159–60) (internal citation omitted).

The public policy exception, however, is "a narrow one," *Parsons v. United Tech. Corp.*,

243 Conn. 66, 79 (1998), and "courts should not lightly intervene to impair the exercise of

managerial discretion or to foment unwarranted litigation," *Sheets v. Teddy's Frosted Foods,*

*Inc.*, 179 Conn. 471, 477 (1980). And "whether a challenged discharge violates public policy . . .

is a question of law to be decided by the court." *Geysen v. Securitas Sec. Servs. USA, Inc.*, 322

Conn. 385, 407 (2016). When a court evaluates claims of wrongful discharge in violation of

public policy, it "look[s] to see whether the plaintiff has alleged that his discharge violated any

explicit statutory or constitutional provision or whether he alleged that his dismissal contravened

any judicially conceived notion of public policy." *Thibodeau*, 260 Conn. at 699 (internal

alterations omitted).

Courts have allowed plaintiffs to state claims of common law wrongful discharge for

violation of public policy where plaintiffs point to explicit statutory language giving rise to the

public policy at issue. *See, e.g.*, *Frank v. CCARC, Inc.*, No. HHDCV166066639, 2016 WL

8135425, at *3 (Conn. Super. Ct. Dec. 27, 2016) (allowing a wrongful discharge claim where

state statutes clearly stated a policy in favor of employees reporting abusive conduct against a

disabled individual, and the Connecticut Supreme Court had recognized "a clear, well-defined

and dominant state public policy in favor of the care and protection of persons with [intellectual

disability]" (quoting *State v. New England Health Care Emps. Union, Dist. 1199, AFL-CIO*, 271 Conn. 127, 137 (2004))); *Faulkner v. United Techs. Corp., Sikorsky Aircraft Div.*, 240 Conn. 576, 585-86(1997) (allowing a wrongful discharge claim in violation of public policy that was expressed in a federal fraud statute); *Parsons v. United Techs. Corp.*, *Sikorsky Aircraft Div.*, 243 Conn. 66, 77-80 (1997) (allowing a wrongful discharge claim where the plaintiff pointed to several state statutes explicitly requiring employers to maintain a reasonably safe workplace for its employees); *Antinerella v. Rioux*, 229 Conn. 479, 493 (1994) (permitting a wrongful discharge claim where it "genuinely involve[d] the mandates of public policy derived directly from state statutes"), *overruled on other grounds by Miller v. Egan*, 265 Conn. 301 (2003).

By contrast, courts have rejected claims of wrongful discharge where there was "no statutorily based expression of public policy sufficient to warrant an exception to the at-will employment doctrine." *Thibodeau*, 260 Conn. at 701; *see also Geysen v. Securitas Sec. Servs.*, 322 Conn. at 408 ("We repeatedly have underscored our adherence to the principle that the public policy exception to the general rule allowing unfettered termination of an at-will employment relationship is a narrow one. . . . Consequently, we have rejected claims of wrongful discharge that have not been predicated upon an employer's violation of an important and clearly articulated public policy." (quoting *Thibodeau*, 260 Conn. at 701)).

Ms. Leto argues that the "grounds for [her] firing violated public policy, i.e. her rights to privacy and freedom of association as enshrined in the first and fourteenth amendments to the United States Constitution, Article First Section 7 of the Constitution of the State of Connecticut and [Bridges]'s own staff handbook." Second Am. Compl. ¶ 20.

Bridges sets forth several arguments in support of its motion to dismiss the wrongful discharge count.

As to the First Amendment claims, Bridges argues that "it is not clear that the [F]irst [A]mendment contains any cognizable right to privacy; in fact, the chief judge in this district recently ruled that it does not." Second MTD Mem. at 9 (emphasis omitted) (citing *Milner v. Mulligan*, No. 3:16-cv-1857 (SRU), 2016 WL 7246069 (D. Conn. 2016)). Bridges argues further that even if the First Amendment could be seen as the source of a privacy right, Ms. Leto's Second Amended Complaint "is fatally flawed because that right does not include a fundamental right of association." *Id.* at 10 (emphasis omitted).

As to the Fourteenth Amendment claims, Bridges argues that "even though the [F]ourteenth [A]mendment protects privacy rights in certain instances, there is no clearly established public policy that protects what the plaintiff alleges to be her privacy right here," or the right to privacy "in her relationship" with Mr. Dixon. *Id.* at 12 (internal citations omitted). In Bridges's view, "[t]here is no 'important public policy,'" arising from the Fourteenth Amendment, "in protecting ostensibly consensual relationships from an employer's action." *Id.* at 13.

Finally, as to both claims, Bridges argues that even if a right to privacy could be found in the First or Fourteenth Amendments to the United States Constitution, "such a right governs only the behavior of state actors, and not private companies such as Bridges," and Ms. Leto "cannot show that Bridges is a state actor for this purpose." *Id.* at 16 (emphasis omitted).

The Court agrees that Ms. Leto has not sufficiently alleged at this stage that Bridges is a state actor for purposes of her wrongful discharge claim.

"'Because the United States Constitution regulates only the Government, not private parties,' a litigant . . . who alleges that her 'constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'"[6] *Grogan v. Blooming Grove Volunteer Ambulance Corps*, 768 F.3d 259, 263 (2d Cir. 2014) (quoting *Flagg v. Yonkers Sav. & Loan Ass'n, FA*, 396 F.3d 178, 186 (2d Cir. 2005)). To prove an action is attributable to the State, "a plaintiff must establish both that [the] alleged constitutional deprivation [was] caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible, *and* that the party charged with the deprivation [is] a person who may fairly be said to be a state actor." *Id.* at 263-64 (citations and internal quotation marks omitted). The latter inquiry requires proof that "there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Id.* at 264 (internal quotation marks and citations omitted).

At the pleading stage, a plaintiff need not conclusively prove state action but must plausibly allege that it occurred, or that "a nexus between the private defendants and the State" existed, by relying on more than "vague and conclusory" statements. *White v. Monarch Pharm., Inc.*, 346 F. App'x 739, 741 (2d Cir. 2009) (dismissing a Section 1983 complaint for failing to plausibly allege state action); *Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir. 1992)

---

[6] Though the majority of the cases cited in this section refer to cases arising under 42 U.S.C. § 1983, Ms. Leto's wrongful discharge claim, which rests on purported constitutional violations, also requires state action. *See, e.g.*, *Urashka v. Griffin Hosp.*, 841 F. Supp. 468, 473 (D. Conn. 1994) ("Absent state action, the plaintiff simply cannot pursue a claim under the First Amendment to the United States Constitution." (citing *Lloyd Corp. v. Tanner*, 407 U.S. 551 (1972) (holding that "a privately owned retail shopping center is not subject to the First Amendment, which safeguards the right of free speech by limitations on *state* action"))); *Musso v. Hourigan*, 836 F.2d 736, 742 (2d Cir. 1988) (the First Amendment "prohibits state action that regulates speech on the basis of content"); *Blum v. Yaretsky*, 457 U.S. 991 (1982) (acts of private individuals are beyond the scope of state action, and are thus beyond the protections of the federal constitution unless the state has exercised coercive power, making the act that of the state); *Johnson v. Carpenter Tech. Corp.*, 723 F. Supp. 180, 185 (D. Conn. 1989) (discussing the plaintiff's allegations relating to the "right to privacy" and noting that "in the context of an employee's claim against a private employer such a right has little force because it protects against incursions by the government and persons acting as government agents").

(citation omitted) (holding that the plaintiff's allegation that the defendant, "a private entity, acted in concert with the town and its agents," was a "conclusory allegation" that "d[id] not suffice"); *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) ("A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity.") (citation omitted). The Second Circuit has instructed that the fair attribution analysis must begin by identifying the "specific conduct of which the plaintiff complains, rather than the general characteristics of the entity." *Grogan*, 768 F.3d at 264 (internal quotation marks omitted). From there, the determination of whether there is state action is a "matter of normative judgment" that requires the Court to examine the totality of the circumstances. *Id.*

There is "no single test to identify state actions and state actors," but rather "a host of factors that can bear on the fairness of an attribution of a challenged action to the state." *Ortolaza ex rel. E. v. Cap. Region Educ. Council*, 388 F. Supp. 3d 109, 127 (D. Conn. 2019). In the Second Circuit, "the actions of a nominally private entity" are generally "attributable to the state" in one of three circumstances: when "(1) the entity acts [under] the coercive power of the state or is controlled by the state ('the compulsion test')"; "(2) when the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies ('the joint action test' or 'close nexus test')" or "(3) when the entity has been delegated a public function by the state[] ('the public function test')." *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (alterations and internal quotation marks omitted). In accordance with these principles, "a private entity does not become a state actor 'merely on the basis of the private entity's creation, funding, licensing, or regulation by the government,'" and "a court analyzing

whether a private entity acts under color of state law first must identify 'the specific conduct of which the plaintiff complains rather than the general characteristics of the entity.'" *Ortolaza*, 388 F. Supp. 3d at 127 (quoting *Sybalski*, 546 F.3d at 255).

Taking the allegations in Ms. Leto's Second Amended Complaint as true, Bridges is a private entity and, therefore, is not explicitly a state actor. *See* Second Am. Compl. ¶ 1 (Bridges "was and is a Connecticut corporation"). The only fact set forth in Ms. Leto's Second Amended Complaint that refers to the relationship between Bridges and the State is that Bridges allegedly "was and is the state-designated Local Mental Health Authority" for various communities in Connecticut. *Id.* ¶ 2.

In her opposition to Bridges's motion to dismiss, Ms. Leto does not address Bridges's arguments as to state action on the merits, but instead claims that she is not required at this stage of the pleadings to "show . . . that Bridges is a state actor." Opp'n Second MTD at 12 (internal quotation marks and emphasis omitted). She claims that "now is not the time to offer facts," and her allegation that Bridges is the "state-designated Local Mental Health Authority," standing alone, is "all that, if not more than, the Federal Rules require." *Id.* at 13-14 (citing Second Am. Compl. ¶ 2).

The Court disagrees.

As an initial matter, Ms. Leto must set forth at this stage of the pleadings more than "vague and conclusory" statements that Bridges is a state actor. *See White v. Monarch Pharm., Inc.*, 346 F. App'x at 741; *Spear*, 954 F.2d at 68; *Ciambrello*, 292 F.3d at 324. Indeed, this aligns with the general requirements under *Twombly* and *Iqbal* that "[t]hreadbare recitals of the element of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678, and that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *Twombly*, 550 U.S. at 555; *see also Arista Records LLC*, 604 F.3d at 120 (a complaint must contain "factual amplification . . . to render a claim plausible").

To the extent that Ms. Leto argues that her allegation that Bridges is a "state-designated Local Mental Health Authority," Second Am. Compl. ¶ 2, is sufficient "factual amplification" to survive the motion to dismiss phase, the Court also disagrees. Even if true, Bridges's designation by the state to serve as a Local Mental Health Authority, standing alone, does not demonstrate that Bridges is a state actor both in general or specifically with respect to the conduct Ms. Leto challenges, namely her alleged termination by Bridges. *See, e.g.*, *Ortolaza*, 388 F. Supp. 3d at 127 ("[A] private entity does not become a state actor 'merely on the basis of the private entity's creation, funding, licensing, or regulation by the government,'" and "a court analyzing whether a private entity acts under color of state law first must identify 'the specific conduct of which the plaintiff complains rather than the general characteristics of the entity.'" *Id.* (quoting *Sybalski*, 546 F.3d at 255)); *see also Grogan*, 768 F.3d at 264 (the fair attribution analysis must begin by identifying the "specific conduct of which the plaintiff complains, rather than the general characteristics of the entity" (internal quotation marks omitted)).

Ms. Leto therefore has set forth no facts that, when taken as true, demonstrate that Bridges is a state actor for purposes of her wrongful discharge claim, let alone facts sufficient to survive application of the tests articulated by the Second Circuit for evaluation of whether a private entity has undertaken state action.[7] *See Sybalski*, 546 F.3d at 257.

---

[7] The state action requirement is also applicable to Ms. Leto's claims under Article 1, Section 7 of the Connecticut Constitution. *See, e.g.*, *Talton v. United Techs. Corp.*, No. 3:07-cv-00766 (PCD), 2007 WL 4225794, at *2 (D. Conn. 2007) ("A plaintiff must . . . allege state action to state a claim of a violation of the Connecticut Constitution." (citing *Hanton v. Massarri*, No. CV05400314, 2005 WL 3112807, at *1 (Conn. Super. Nov. 2, 2005) ("[C]auses of action for deprivation of a fundamental right under both the Connecticut and United States Constitutions require a threshold showing of state action.")); *see also United Food & Com. Workers Union v. Crystal Mall Assocs., L.P.*, 270 Conn. 261, 281-82 (2004) (noting that "the Connecticut constitution requires state action" in analyzing the

Because Ms. Leto has not plausibly alleged that Bridges is a state actor as described above, the Court need not, and does not, address the remainder of Bridges's arguments related to the wrongful discharge claim.[8]

Accordingly, the Court will dismiss Ms. Leto's wrongful discharge claim.

## B.  Count Two and Three: Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing

Having determined that Ms. Leto's wrongful discharge claim should be dismissed, the Court then must determine whether it should exercise supplemental jurisdiction over her state law claims, namely her breach of contract and breach of the covenant of good faith and fair dealing claims.

Under 28 U.S.C. § 1367(a),

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

"[D]istrict courts may decline to exercise supplemental jurisdiction over a claim," however, if "the district court has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3).

Supplemental or pendent jurisdiction is a matter of discretion, not of right. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1996). Where all federal claims have been dismissed before a trial, state claims generally should be dismissed without prejudice and left for resolution

---

question posed by the plaintiff, namely "whether the provisions of [the Connecticut] constitution are satisfied by a showing of less state action than what generally has been required under their federal counterparts"); *Urashka*, 841 F. Supp. at 473 ("Nor can the plaintiff assert a claim under Article First of the Connecticut Constitution without a showing of state action." (citing *Cologne v. Westfarms Assocs.*, 192 Conn. 48, 66 (1984))).

[8] Although the issue was raised by Bridges at oral argument, unless expressly raised by Ms. Leto, the Court takes no position as to whether the allegations set forth by Ms. Leto set forth a cognizable violation of public policy related to sexual harassment or employment discrimination.

by the state courts. *See* 28 U.S.C. § 1367(c)(3); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."); *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise supplemental jurisdiction over the remaining state-law claims.").

"Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional values of judicial economy, convenience, fairness, and comity." *Kolari*, 455 F.3d at 122; *see also Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 83 (2d Cir. 2018) ("If one of the § 1367(c) categories applies, the district court may then undertake the discretionary inquiry of whether to exercise supplemental jurisdiction . . . . '[A] district court should not decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote the values articulated in *Gibbs*: economy, convenience, fairness, and comity.'" (quoting *Jones v. Ford Motor Credit Co.*, 385 F.3d 205, 214 (2d Cir. 2004)).

"In weighing these factors, the district court is aided by the Supreme Court's additional guidance in *Cohill* that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Kolari*, 455 F.3d at 122 (quoting *Cohill*, 484 U.S. at 350); *see also Catzin*, 899 F.3d at 83 ("Under this prong, in a great many cases, the evaluation will usually result in the dismissal of the state-law claims.")

But, as the Second Circuit recently emphasized, "[t]he principle that the elimination of federal-law claims prior to trial generally points to declining to exercise supplemental jurisdiction

'in the usual case' clearly does not mean that the balance of factors always points that way." *Catzin*, 899 F.3d at 86. Thus, "[w]hen §1367(c)(3) applies, the district court must still meaningfully balance the supplemental jurisdiction factors" of judicial economy, convenience, fairness, and comity before declining to exercise supplemental jurisdiction. *Id.*

The balance of factors here weighs in favor of declining to exercise supplemental jurisdiction, as the sole claim conferring jurisdiction on this Court will be dismissed, as discussed above.[9] The Court finds at this juncture that principles of comity suggest that Connecticut courts are more suited to determine the viability of Plaintiff's breach of contract and breach of the duty of good faith and fair dealing claims, which involve Connecticut law.[10]

Because this case was initiated in Connecticut Superior Court and removed to this Court, the remaining state law claims would in the ordinary course be remanded to Connecticut Superior Court. *See Valencia v. Lee*, 316 F.3d 299, 308 (2d Cir. 2003) ("Because this case was commenced in state court, the district court should remand the action to the state court in which it was originally filed."); *see also Kaya v. City of New London*, No. 3:05-CV-1436 (JCH), 2008 WL 509240, at *1 (D. Conn. Feb. 13, 2008) (remanding, rather than dismissing, the sole remaining state law causes of action, where the case had been removed to federal court).

---

[9] Ms. Leto's Second Amended Complaint also fails to satisfy the requirements under Federal Rule of Civil Procedure 8, which requires "a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support." Fed. R. Civ. P. 8(a)(1). For the reasons stated above, as well as those set forth in the Notice of Removal, the Court interprets the wrongful discharge claim as conferring federal question jurisdiction. While the Second Amended Complaint also does not set forth Ms. Leto's citizenship, because the Second Amended Complaint does not allege that the matter in controversy exceeds the sum or value of $75,000, *see* Second Am. Compl. at 6 (claiming only "more than" $15,000), the Court also does not appear to have diversity jurisdiction over the matter, *see* 28 U.S.C. § 1332. Therefore, remand of Ms. Leto's state-law claims, once the wrongful discharge claim has been dismissed, is an appropriate course of action.

[10] To the extent that the breach of the covenant of good faith and fair dealing claims concern issues of interpretation of federal law, specifically any alleged violations of the United States Constitution, these also would require state action as discussed above.

As discussed below, because the Court will permit Ms. Leto to move for leave to amend her Complaint to remedy the deficiencies identified in her wrongful discharge claim, however, the Court will refrain from remanding the remaining state-law claims until after **August 27, 2021**, if Ms. Leto does not move for leave to amend her Complaint to remedy the deficiencies identified in this Order, or until after the Court addresses any motion for leave to amend, if Ms. Leto files such a motion.[11]

Accordingly, the Court will decline at this juncture to exercise supplemental jurisdiction over Ms. Leto's breach of contract and breach of the covenant of good faith and fair dealing claims, but will delay remand of these claims as described above.

### C.  Leave to Amend

Rule 15 of the Federal Rules of Civil Procedure provides that parties may either amend once as a matter of course or, once the period has elapsed, move for leave to file an amended complaint. Fed. R. Civ. P. 15(a). Parties who fail to file an amended complaint within 15(a)(1)'s time period, or who seek additional amendments, may seek the consent of their opposing party of the court's leave to amend. Fed. R. Civ. P. 15(a)(2). The Court also "may *sua sponte* grant leave to amend." *Town of Islip v. Datre*, 245 F. Supp. 3d 397, 430 (E.D.N.Y. 2017) (quoting *Straker v. Metro. Transit Auth.*, 333 F. Supp. 2d 91, 102 (E.D.N.Y. 2004)), The Court's discretion to grant such leave is broad, *see id.* (quoting *Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998)), but the "court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2).

Reasons for denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously

---

[11] To the extent Ms. Leto wishes to file such an amended pleading, she also is granted leave to replead these state-law claims.

allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility

of amendment." *Parker Meridien Hotel*, 145 F.3d at 89; *see also Lucente v. IBM*, 310 F.3d 243,

258 (2d Cir. 2002) (noting leave to amend may be denied when amendment is "unlikely to be

productive," such as when an amendment is "futile" and "could not withstand a motion to

dismiss [under] Fed. R. Civ. P. 12(b)(6)." (internal citations omitted)); *Park B. Smith, Inc. v.

CHF Indus. Inc.*, 811 F. Supp. 2d 766, 779 (S.D.N.Y. 2011) ("While mere delay, absent a

showing of bad faith or undue prejudice, is not enough for a district court to deny leave to

amend, the longer the period of an unexplained delay, the less will be required of the nonmoving

party in terms of a showing of prejudice." (internal quotation marks and citations omitted)).

At the same time, "[a]n amendment to a pleading is futile if the proposed claim could not

withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente*, 310 F.3d at 258;

*see also Donovam v. Am. Skandia Life Assurance Corp.*, 217 F.R.D. 325, 325 (S.D.N.Y. 2003)

("Where a proposed amend complaint cannot itself survive a motion to dismiss, leave to amend

would be futile and may clearly be denied."), *aff'd*, 96 F. App'x 779 (2d Cir. 2004).

The Court also must consider that "[d]ismissal with prejudice is a harsh sanction." *Igidi v.

State of Conn. Dep't of Corr.*, No. 3:13-CV-1338 (RNC), 2015 WL 7428527, *3 (D. Conn. Nov.

20, 2015); *cf. Neitzke v. Williams*, 490 U.S. 319, 328 (1989) ("When a complaint raises an

arguable question of law which the district court ultimately finds is correctly resolved against the

plaintiff, dismissal on Rule 12(b)(6) grounds is appropriate, but dismissal on the basis of

frivolousness is not."); *Thrall v. Central N. Y. Regional Transp. Auth.*, 399 F. App'x 663, 665

(2d Cir. 2010) ("Rule 41(b) dismissal [is] a harsh remedy to be utilized only in extreme

situations.'" (alteration in the original) (quoting *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001)).

Although Ms. Leto's filings have not yet amounted to a viable claim for wrongful discharge, the Court has yet to conclude definitively that there would be futility, precluding the filing of an amended pleading. To the extent that Ms. Leto can remedy the deficiencies identified in this ruling, she may move for leave to file an amended pleading by **August 27, 2021**, with any proposed amended pleading attached as an exhibit.

## IV.     CONCLUSION

For the foregoing reasons, the Court enters the following orders:

Ms. Leto's second motion to amend is **GRANTED** and, in light of that order, Ms. Leto's first motion to amend is **DENIED as moot**;

Bridges's first motion to dismiss is **DENIED as moot** in light of the filing of the Second Amended Complaint;

Bridges's motion to dismiss is **GRANTED** with respect to the wrongful discharge claim; and

The Court will decline at this juncture to exercise supplemental jurisdiction over Ms. Leto's breach of contract and breach of the covenant of good faith and fair dealing claims, but will delay remand of these claims as described above.

Ms. Leto may move for leave to file an amended pleading by **August 27, 2021**, to the extent the deficiencies identified in this ruling can be addressed.

**SO ORDERED** at Bridgeport, Connecticut, this 30th day of July, 2021.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE